UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIS BLUE SHIPPING COMPANY S.A.,<br><br>Plaintiff,<br><br>- against -<br><br>NORVIC SHIPPING INTERNATIONAL LLC and NORVIC SHIPPING ASIA PTE LTD.,<br><br>Defendants. | Civil Case No. 2:26-cv-5417 |

**VERIFIED COMPLAINT**

Plaintiff, Atlantis Blue Shipping Company S.A. ("Atlantis Blue"), by and through its attorneys, Freehill Hogan & Mahar LLP, brings this action pursuant to Federal Rule of Civil Procedure 9(h) and Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule B") against Defendants, Norvic Shipping International LLC ("Norvic") and Norvic Shipping Asia Pte Ltd. ("Norvic Asia"), and as and for its Verified Complaint against the Defendants, alleges upon information and belief as follows:

**JURISDICTION**

1. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) in that it involves claims for the breach of a maritime contract of charter party. This Court has admiralty jurisdiction under 28 U.S.C. § 1333 and under Rule B.

1. Norvic and Norvic Asia cannot be found within this District within the meaning of Supplemental Admiralty Rule B, as explained herein. *See* Declaration of Yaakov U. Adler (the "Adler Declaration") ¶¶ 3-8, attached hereto as **Exhibit 1** and incorporated herein by reference.

2.

3. Venue is properly situated in this District because Norvic and/or Norvic Asia's property is, or at the time of service of a writ of attachment will be, in the possession, custody, or control of garnishees within this District, as will be set forth in full below.

**THE PARTIES**

4. At all times relevant hereto, Plaintiff Atlantis Blue was and still is a foreign business entity organized and existing under the laws of the Republic of the Marshall Islands, with an office and place of business located at 7, Mitropoleos Square, 105 57, Athens, Greece.

5. Atlantis Blue was at all relevant times and still is the registered owner of a bulk carrier vessel named the MV ATLANTIS UNITY, IMO No. 9594444 (the "Vessel").

6. Defendant Norvic was at all relevant times and still is upon information and belief a business entity organized and existing pursuant to the laws of the State of New York with a place of business in New York.

7. Norvic was at all relevant times the Charterer of the Vessel on its own behalf or entered into the C/P on behalf of a substitute affiliated entity, Norvic Asia.

8. Defendant Norvic Asia was at all relevant times and still is upon information and belief a foreign business entity organized and existing pursuant to the laws of a foreign country with a place of business in Singapore.

9. Norvic Asia was at all relevant times the substitute Charterer of the vessel, or it acted as a paying agent on behalf of Norvic, making payments to Atlantis Blue which were due under the C/P.

**FACTUAL BACKGROUND**

10. In December 2025, Atlantis Blue, as Owners, agreed to let the Vessel to "NORVIC SHIPPING INTERNATIONAL LLC OR SUB", as Charterers, for a time charter trip from Brazil

to Spain/North Spain under a December 17, 2025 recap, which incorporated the NYPE 1946 Time Charter Party Form, as amended, and the "RIDER CLAUSES TO THE MV 'ATLANTIS DISCOVERY' CHARTER PARTY DATED 24TH APRIL 2025" (the "C/P"). A copy of the C/P is attached hereto as **Exhibit 2** and incorporated herein by reference.

11. Pursuant to the C/P, the Charterer was obligated to pay: (i) periodic hire at the agreed daily rate of $14,600 per day pro rata, including overtime, payable every 15 days in advance; (ii) fuel and bunker-related costs, port charges, commissions, and "all other usual expenses except those before stated"; (iii) a lump-sum payment of USD 5,000 in lieu of hull cleaning; (iv) a separate charge of USD 1,500 per month pro rata for cleaning, venting, and equipment costs, which was calculated at a rate of approximately $49.315177 per day; (v) the difference between the bunker quantity on delivery and at redelivery at a rate of $430 per metric ton for Intermediate Fuel Oil and at a rate of $670 per metric ton for Low Sulphur Marine Gas Oil; and the expected FuelEU Penalty for the voyage. (Ex. 2 at p. 3).

12. In addition, pursuant to the ETS – Emission Trading Scheme Allowances Clause of the C/P, the Charterer was required to transfer to Atlantis Blue certain emissions credits corresponding to the Vessel's emissions during the course of the charter. (Ex. 2, at pp. 36-37).

13. Atlantis Blue duly delivered the Vessel pursuant to the C/P and fully performed all obligations in accordance with the C/P's terms.

14. During the course of the C/P, certain funds due to Atlantis Blue under the C/P were paid to Atlantis Blue from an account held in the name of Norvic Asia at HSBC Bank USA, N.A. It is unclear whether Norvic Asia transmitted those funds as substitute charterer or as a paying agent on behalf of Norvic.

15. Following redelivery of the Vessel to Atlantis Blue at the conclusion of the C/P, Atlantis Blue prepared and sent to Norvic a Final Statement of Account ("FSOA") on February 26, 2026, detailing the balance due and owing under the C/P, as well as a FuelEU and EUAs Calculation,[1] detailing the emissions allowances (or credits) Charterers were required to transfer to Atlantis Blue. A copy of the FSOA and FuelEU and EUAs Calculation is attached hereto as **Exhibit 3** and incorporated herein by reference.

16. As reflected in the FSOA, and after credit for all sums paid and allowable offsets, there is an open balance of $194,846.86, which is overdue and remains unpaid, despite due demand.

17. In addition, as reflected in the FuelEU and EUAs Calculation, which was also sent to Norvic on February 26, 2026, Charterer is obligated to credit 1010.77 EUAs to Atlantis Blue's nominated Emissions Scheme account.

18. Charterers failed to transfer the required EUAs as required under the C/P, despite due demand, and is therefore liable to Atlantis Blue for damages, including the value of the EUAs which were not transferred.

19. As of February 26, 2026, the value of an EUA was approximately €72-73. On that date, the spot exchange rate for Euros to U.S. Dollars published by the Federal Reserve was 1.1792, so utilizing an approximate €72.5 price for an EUA, the value of the EUAs that were not transferred to Atlantis Blue on February 26, 2026 in accordance with the C/P was approximately $86,412.74 (€72.5 x 1.1792 = $85.49; $85.49 x 1010.77 = $86,412.74).[2]

[1] An "EUA," or "European Union Allowance," is a carbon emission allowance that is tradable under the European Union's Emissions Trading System.
[2] *See* https://fred.stlouisfed.org/series/DEXUSEU/

20. Thus, Charterer is liable to Atlantis Blue for approximately $86,412.74 in EUA credit.

21. The C/P is governed by English law, and all disputes arising thereunder must be resolved by arbitration in London. (Ex. 2 at p. 3).

22. Should Charterer continue to refuse to pay, Atlantis Blue will demand arbitration in London and brings this action for purposes of obtaining security under Rule B, in advance of an award in London arbitration, as neither Norvic nor Norvic Asia can be "found" in this District for purposes of Rule B.

## CAUSE OF ACTION FOR BREACH OF MARITIME CONTRACT

23. Atlantis Blue repeats and realleges the allegations set forth in Paragraphs 1 through 22 above as if fully set forth herein.

24. By reason of the foregoing, Norvic or Norvic Asia, acting as Charterer or substitute Charterer, breached the C/P and currently owe Atlantis Blue the principal sum of $194,846.86, plus approximately $86,412.74 in EUA credits, for a total of $281,259.60 due and owing.

25. In addition to the principal sums due, Atlantis Blue seeks security in an amount which will cover the award of interest, attorneys' fees and costs, and arbitral fees which are recoverable under English law and the C/P.

26. Atlantis Blue calculates the interest component of its attachment application as $48,078.22 based on an interest rate of 6.75%, the U.S. prime rate in effect when the FSOA due, compounded quarterly – as London arbitral tribunals routinely apply the U.S. Prime rate in effect at the time the claim arose with interest awarded on a quarterly compounding basis – over the period the claimed sums have been outstanding and as projected out for a further two years within which entry of judgment on an arbitral award is anticipated.

27. Further, and because claims in arbitration in London under the applicable London Maritime Arbitrators Association ("LMAA") Terms empower the arbitrators to award legal fees, Atlantis Blue also seeks security in an amount which will cover the anticipated legal fees and costs incurred in connection with the presentation of this claim, estimated to be $35,000, with recoverable arbitral costs estimated at $40,000.

28. In total, therefore, Plaintiff Atlantis Blue estimates, as nearly as can be presently computed, that the total judgment will be $404,337.82, inclusive of the principal amount of the claim, interest, costs and attorneys'/arbitral fees.

**REQUEST FOR ISSUANCE OF PROCESS**
**OF MARITIME ATTACHMENT AND GARNISHMENT**

29. Plaintiff seeks issuance of Process of Maritime Attachment and Garnishment so that it may obtain security for the amounts due and owing under the C/P.

2. Upon information and belief, and after investigation, neither Norvic nor Norvic Asia can be found in this District within the meaning of Rule B. *See* Ex. 1, Adler Declaration ¶¶ 3-8.

3. However, Norvic and/or Norvic Asia have, or will during the pendency of this Action have, assets within this District comprising, *inter alia*, goods, chattels, credits, debts, effects and monies, funds, accounts, letters of credit, or other tangible or intangible property which belong to them, are claimed by them, are being held for or on their behalf, or which are being transferred for their benefit, within this jurisdiction. *See* Adler Declaration ¶¶ 9-13.

4. Upon information and belief, and after investigation, Norvic maintains a bank account at Valley National Bank, whose corporate headquarters are located at 70 Speedwell Avenue, Morristown, New Jersey, 07960, and which maintains multiple branches and ATMs in

this District from which funds within said account are accessible and capable of being withdrawn in this District. *See* Adler Declaration ¶¶ 12.

5. Upon information and belief, and after investigation, Norvic Asia maintains an account at HSBC Bank USA N.A., which maintains multiple branches and ATMs in this District from which funds within said account are accessible and capable of being withdrawn in this District and out of which payments made pursuant to the C/P originated. *See* Adler Declaration ¶¶ 10-11.

6. While all disputes arising out of the C/P will be heard in London Arbitration pursuant to English law, this action has been filed in accordance with Rule B to obtain jurisdiction over the Defendants and for a maritime attachment to obtain security for Atlantis Blue's maritime breach of contract claim which will be pursued in London arbitration.

7. The total amount of funds to be attached is $404,337.82.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Atlantis Blue prays:

i) That process in due form of law according the practice of this Court in the form of a writ of maritime attachment be issued against Defendants Norvic and Norvic Asia, in the amount of $404,337.82, and if Defendants cannot be found in this District pursuant to Rule B, that their goods, chattels, credits, bills of lading, debts, effects and monies, funds, accounts, letters of credit, or other tangible or intangible property which belongs to them, is claimed by them, is being held for or on their behalf, or which is being transferred for their benefit within this District may be attached in an amount sufficient to answer Atlantis Blue's claims;

ii) That Defendants or any other person claiming an interest in the attached funds may be cited to appear and answer for the matters aforesaid;

iii) That this Court enter an order appointing a special process server pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure and Supplemental Rule B and authorizing service electronically, by personal service of the writ on Valley National Bank at 70 Speedwell Avenue, Morristown, New Jersey, 07960 and on HSBC Bank at its branch located at 407 Main St., Chatham, NJ 07928, or by any other means accepted by garnishees Valley National Bank and HSBC Bank;

iv) That this Court retain jurisdiction over this matter through the entry of any final judgment following issuance of an award in LMAA arbitration; and

v) That the Court grant any other relief in favor of Plaintiff that it deems just and proper under the circumstances.

Dated: Florham Park, New Jersey
May 13, 2026

Respectfully submitted,
FREEHILL HOGAN & MAHAR LLP
*Attorneys for Plaintiff Atlantis Blue*

By: ______________________________

Yaakov U. Adler (*Pro Hac Vice Application Pending)*
Madeline S. Ritter (*Pro Hac Vice Application Pending)*
Austin Melville
220 Park Avenue Florham Park,
New Jersey 07932
973-623-5514
973-623-3813
adler@freehill.com
ritter@freehill.com
melville@freehill.com

**ATTORNEY VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Yaakov U. Adler declares and states:

1. I am a Partner with the law firm of Freehill Hogan & Mahar LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by representatives/counsel of the client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign business entity, none of whose officers are presently within this Judicial District.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 13, 2026

Yaakov U. Adler